## BIRTWELL *v.* SALTONSTALL, Collector.

*(Circuit Court, D. Massachusetts.* August 6, 1889.)

CUSTOMS DUTIES—CLASSIFICATION—IRON BEAMS.

Pieces of iron specially manufactured, fitted, purchased, and shaped as parts of a particular floor frame are not dutiable, under 22 U. S. St. at Large, 499, as "iron or steel beams, girders, joists * * * and building forms, together with all other structural shapes of iron," but fall within another clause of the schedule covering "manufactures, articles, or wares not specially enumerated, * * * composed wholly or in part of iron," although they might be merchantable as beams, or other articles specifically enumerated, when the frame is taken to pieces.

At Law.

Action by Joseph Birtwell against Leverett Saltonstall, collector of the port of Boston, to recover duties improperly collected.

*C. L. Woodbury* and *J. P. Tucker,* for plaintiff.

*T. H. Talbot,* Asst. U. S. Atty., for defendant.

COLT, J. The plaintiff in this case imported from Antwerp the iron-work for the foundation or frame of the floor in the third story of the new court-house in Boston. Each piece of iron was manufactured, fitted, punched, and shaped for its special place in the floor frame. The defendant exacted a duty of $1\frac{1}{4}$ cents per pound upon all of this iron, under that provision of schedule C, of the act of March 3, 1883, which provides as follows:

"Iron or steel beams, girders, joists, angles, channels, car-truck channels, TT, columns, and posts, or parts or sections of columns and posts, deck and bulb beams, and building forms, together with all other structural shapes of iron or steel, one and one-fourth of one cent per pound." 22 St. at Large, 499.

The plaintiff contends that this iron-work should only have been assessed with a duty of 45 per cent. *ad valorem,* under the following provision in the same schedule:

"Manufactures, articles, or wares, not specially enumerated or provided for in this act, composed wholly or in part of iron, * * * and whether partly or wholly manufactured, forty-five per centum ad valorem."

The contention of the plaintiff is that the description of iron provided for in the clause of the law under which the defendant acted refers to such described forms and shapes of iron in their ordinary completed condition as such forms and shapes, and does not refer to or include such described forms and shapes after they have been advanced, or taken for a special, particular use, and manufactured into a new product. On the other hand, the collector contends that as the importation was composed of beams, girders, etc., although they may have been designed for a special purpose, the duty was properly assessed, and, further, that the general words, "all other structural shapes of iron or steel," in the last part of clause referred to, are broad enough to cover this importa-

tion, if it cannot, strictly speaking, be classified under the first enumeration.

Upon the face this case seems to raise a nice question of construction under the two provisions of the statute which have been cited; but, when we come to examine the policy of the courts and the treasury department in their interpretation of similar laws relating to the assessment of duties, I do not think the proper solution of the question is very difficult. It must be always borne in mind that what was imported in this instance was not the beams, girders, and angles as known to commerce, nor a structural form, commercially speaking, but a new article of manufacture. The fact that this floor frame may have been composed of beams and other articles specifically enumerated in the same clause of the statute, or that when the frame was taken to pieces the beams might have been sold as beams, or have become, in a commercial sense, merchantable beams, (which is not proved, the weight of evidence being rather to the contrary,) does not, in my opinion, change the classification which should be made. A steam-engine or a loom may be made up of many things specifically enumerated in the statute, and it may be when separated into their parts some of those parts might become merchantable, commercially speaking, but, for purposes of revenue classification, the article imported retains its identity as one thing. If the thing imported has passed through a process of manufacture, the stage or degree of manufacture seems to have no weight in the determination of a proper assessment. *Spring Works Co.* v. *Spalding*, 116 U. S. 541, 6 Sup. Ct. Rep. 498, is an instructive case. The article there imported was known as "steel tire blooms," and it was made by reheating and hammering a round ingot of steel. The court held that it was properly assessed under the provision "all manufactures of steel * * * not otherwise provided for, * * * but all articles partially manufactured, shall pay the same duty as if wholly manufactured;" and that it did not come under the provision, "steel in any form not otherwise provided for." So, in the present case, the articles were once beams, girders, and angles, but from being ordinary beams, girders, and angles they have passed through a stage of manufacture, by fitting, shaping, cutting, and punching, and they have become component parts of a frame for the foundation of a floor in a particular building. When the materials composing this frame were manufactured into something else, designed for a special purpose, they were no longer dutiable as such, but the product became dutiable as a manufacture of iron. In *Badger* v. *Ranlett*, 106 U. S. 255, 1 Sup. Ct. Rep. 346, 350, the importation was strips of band and hoop iron, cut a certain length, and tied up in bundles, with buckles attached to each bundle. The law provided for "band or hoop iron," and also for manufactures of iron not otherwise provided for. The collector exacted duties as upon band and hoop iron, while the importer contended that they were a manufacture of iron not provided for, namely, cotton ties, and the court so held. In the unreported case of *Whitney* v. *Arthur*, in the Southern district of New York, referred to in executive document, No. 22, p. 52, of the

17th congress, the merchandise was galvanized iron, cut into sheets, and ready for use as roofing iron. It was classified for duty as galvanized iron, but the importer claimed that its correct classification was under manufactures of iron not otherwise provided for. The trial resulted in favor of the importer, and the department acquiesced in the decision, and directed the payment of the excess of duties exacted. In *Scott* v. *McClung*, tried in the circuit court for the Southern district of Ohio, in 1883, and referred to in treasury synopsis as decision 6,138, the article imported was corrugated sheet-iron. The law provided for "sheet-iron, common or black," also for "manufactures of iron." The jury found for the plaintiffs, classifying the imports as manufactures of iron, and the department accepted the decision as conclusive.

The treasury department have made many rulings enforcing the principle of interpretation contended for by the plaintiff in this case. In 1869, synopsis 513, the importation was tin plates turned down at the ends, and fastened together for use as roofing tin, and they were held to be dutiable as manufactures of tin, and not as tin in plates or sheets. In 1888, synopsis 8,880, sheets of zinc specially made for printing purposes were held dutiable as manufactures of zinc, and not as zinc in sheets. Other instances might be given, but enough has already been said to show the rulings of the courts and of the department on this question.

I had some doubt in my own mind, at first, as to what might properly be included under the term "structural shapes of iron," as used in the clause relied upon by the collector; but I am satisfied, from the specific enumeration which precedes, and from the evidence of those engaged in this branch of business, that these words were not intended by congress, and do not, in a commercial sense, cover the importation in controversy in this case. It appears from the evidence that, speaking in a broad commercial sense, the term "merchantable iron" is limited to rounds, squares, and flats; that anything else, such as beams, girders, angles, etc., having any special shape, and intended to be used in the form of a structure, is a structural shape. In this sense this floor foundation may be said to be manufactured of structural shapes. To give these words a wider signification would be to extend them beyond known commercial usage, and if we do that it may be difficult to draw any line; for, in one sense, most every article of iron imported may be said to possess structural shape.

For these reasons I am of opinion that judgment should be entered in this case for the plaintiff for the excess of duties exacted by the defendant. Judgment for plaintiff.