UNITED STATES *v.* CENTRAL WESTRUMITE CO. (No. 96).[1]

WESTRUMITE ASPHALT—ASPHALTUM OR BITUMEN ADVANCED IN CONDITION.

In the composition of the merchandise, it appears from the record that the original substances employed in the making are different kinds of asphalt or bitumen and that certain chemicals and water are added solely for the purpose of combining the different kinds of asphalt and bitumen and so to perfect the material resulting for use as paving material: *Held*, the material is not to be classified as a chemical compound or mixture, but rather as asphaltum or bitumen advanced in condition, and as such dutiable under paragraph 90, tariff act of 1909.

United States Court of Customs Appeals, April 3, 1911.

TRANSFERRED from United States Circuit Court, Eastern District of Michigan, Abstract 22924 (T. D. 30447).

[Affirmed.]

*D. Frank Lloyd*, Assistant Attorney General (*Charles D. Lawrence* on the brief), for the United States.

*Brown & Gerry* for the appellee.

Before MONTGOMERY, HUNT, SMITH, BARBER and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The merchandise is so-called "westrumite asphalt," manufactured in Canada, and imported at the port of Port Huron, Mich.

The return of the collector states that the duty of 30 per cent ad valorem levied by him was under the provisions of paragraph 56 of the tariff act of 1909 "on certain westrumite (liquid asphalt) * * * returned by the appraiser as liquid asphalt and ammonia (as paint) * * *."

The protestant claimed that the goods were dutiable under paragraph 90 of that act as "asphaltum * * * dried or otherwise advanced in any manner * * *."

At the hearing before the Board of General Appraisers both sides conceded that the article was improperly assessed by the collector. The Government contended there, as it does here, that the proper provision levying duty on the imported article was paragraph 3 of that act, wherein it provided for "all chemical compounds, mixtures, and salts, * * * not specially provided for in this section," as a "chemical mixture." The importer contended, and here maintains,

---

[1] Reported in T. D. 31480 (20 Treas. Dec., 665).

that it was properly dutiable under paragraph 90 of that act, which provides for "asphaltum and bitumen, not specially provided for in this section, * * * if dried or otherwise advanced in any manner * * *."

The Board of General Appraisers, upon the very meager record that was tendered, held that the merchandise was dutiable as claimed by the importer per force of the provision of paragraph 481 of that act, asphaltum being the material of chief value, which provision reads:

* * * and on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value. * * *

The Government further contends that the importer should fail here, as the last quoted provision was not invoked by his protest. The board held this unnecessary.

Upon the record presented it is impossible to determine with any degree of satisfaction whether the imported merchandise is an emulsion, a chemical mixture, or a chemical compound. There is some evidence upon each point. Upon the material point, whether saponification takes place in the processes of its manufacture, the testimony of the one witness who was heard is uncertain, if not conflicting.

There is in the record an analysis by the chemist at the port of New York of the imported articles, but the chemist himself was not called to in anywise enlighten the board or this court as to the chemical effects or reactions resulting from the processes and combinations of material effecting the production of the article, so that we are unable to determine whether this is a solution or emulsion, or a mixture without combinations, or if there has been a chemical reaction of the ingredients.

The board found that the merchandise is not a chemical mixture.

The only witness who testified was Mr. L. S. Van Westrum, from whom the article takes its name.

Samples of the merchandise were introduced and are before the court. As imported the article is of a liquid form. An illustrative sample was introduced as it appears in final use. It is used as a binder for holding together rocks, gravel, and similar substances in the making of bitumen pavements. That is its sole use. After being exposed to the atmosphere for 8 or 10 days the liquid becomes, as tense and hard as rock.

Mr. Van Westrum testified that it consisted of a mixture of 20 per cent California asphalt, 20 per cent Trinidad asphalt, 12 per cent paving flux—which is a liquid asphalt—6 per cent of chemicals, and from 48 to 62 per cent of water. In producing the articles the Trinidad asphalt is first placed in a large vessel and heated to a liquid state, and to this is then added the paving flux; and then the California asphalt is added. This mixture is then allowed to cool

down, and then certain chemicals are added, the names of which Mr. Van Westrum declined to state, as they were a trade secret. The effect, he testified, was that the whole emulsified; that there was no chemical reaction, because emulsification is not a chemical reaction, but simply the holding of the atoms of asphalt in solution; that if this emulsion were boiled it would simply precipitate the asphalt; that this amounted to a mechanical and not a chemical change. He stated later that ammonia was added, but did not make the statement that that was the only chemical. After all this, water is put in, and the amount of water differs according to the season of the year. He further stated that in ultimate use the chemicals evaporated, and when they evaporated the asphaltum was precipitated and became hardened in the form shown by the illustrative exhibit mentioned, which is a small section of asphalt or bitumen pavement or street covering.

No further testimony was introduced by either party.

It is apparent that the determination of whether or not these processes applied to the material stated would result in an emulsion holding the ingredients in solution or a chemical mixture or a combination with any degree of certainty is impossible from this record.

No commercial usage was invoked because the article, being a new and patented one and not sold in wholesale or retail in this country, no commercial name had attached. It is designated by the importer as "asphalt," and its sole use is one of the common uses of asphalt or bitumen.

Asphaltum, as defined by the Century Dictionary, is:

*Asphaltum.*—One of the so-called bituminous substances which are widely diffused over the earth and are of great practical importance.

The asphaltums of various localities differ from each other considerably in chemical composition, as is proved by their different chemical reactions.

As the dutiable provision of paragraph 90 affects both "asphaltum and bitumen," any attempt at differentiation would be unprofitable.

We think that the only uncontradicted and certain fact made clear by the record is that the original substances employed are different kinds of asphalt or bitumen; that the chemicals and water are added solely for the purpose of combining the different classes of asphalt and bitumen and bringing them into that united form and condition that they may be as such readily applied and used as a binder of rocks, gravel, and other materials in the construction of asphalt or bitumen pavements; that when this use is effected and the article or mass of asphaltum and bitumen is exposed to the atmosphere, without other than natural or mechanical means, the asphaltum and bitumen content is precipitated, and, by evaporation or other elimination, assumes a molecular character and condition as asphaltum, or at most, bitumen, and is nothing more or less than a variety of the great family of bitumens.

Undoubtedly the application of the chemicals and the processes bringing it to this condition of adaptability, and which are a part of the merchandise as imported, improve the condition and value of the original varieties of asphaltum that are by this means assembled and made into a kind or combination of asphaltum or bitumen. This condition, however, can not be more aptly described than bitumen or asphalt advanced in condition, and we think that in that condition, as imported, it is "asphaltum and bitumen advanced in condition." Whatever the processes which are being devoted to these varieties of asphaltum and bitumen while and when imported they are but processes assembling and advancing in condition several kinds of asphaltum and bitumen from separate quantities into a single product of such for use as such.

In that view it becomes unimportant to inquire whether or not it is, or is not, a chemical mixture, or a chemical compound, or a chemical salt. It may be, and probably is, both "asphalt and bitumen advanced in condition" and at the same time a "mechanical mixture" or compound. In this status, for customs purposes, it is properly dutiable as asphalt or bitumen advanced in condition for the reason that that phrase is more specific than either the phrases chemical mixture, chemical compound, or chemical salt.

The case is quite similar in this particular to that of Fink *v.* United States (170 U. S., 584). In that case the subject under consideration was muriate of cocaine, which was stipulated a medicinal preparation, and the question was whether the term "medicinal preparation" was more specific than "chemical compound" as such was used in the tariff act of 1890. The Supreme Court held that the chief use of muriate of cocaine being shown to be that of a medicinal preparation the merchandise was more specifically provided for as a medicinal preparation than as a chemical compound.

In this case the uncontradicted record is that the sole use of the imported merchandise is as an asphaltum and bitumen, and being such, as we have seen, advanced in condition, is more specifically provided for as "asphaltum and bitumen advanced in condition" than as a "chemical mixture." The phrase asphaltum and bitumen advanced in condition is even more specific than that of medicinal preparation, whilst the contesting words chemical mixture and chemical compound are essentially the same.

We think, so far as shown by this record, the merchandise falls directly within the terms of paragraph 90 of the act, and in that view consideration of the other points discussed in the briefs is unnecessary.

*Affirmed.*

MONTGOMERY, Presiding Judge, and HUNT, SMITH, and BARBER, Judges, concur.