EUROPEAN TRADING CO. *v.* UNITED STATES (No. 3411) [1]

United States Court of Customs and Patent Appeals, October 26, 1931

*Harper & Harper, De Vries, Crawford & McCook* (*Jesse P. Crawford* of counsel) for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*William H. Futrell* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[1] T. D. 45225.

[Oral argument October 5, 1931, by Mr. Crawford and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal by the importer, appellant, from a judgment of the United States Customs Court, Second Division, overruling the protest of the importer, which protest was lodged against the assessment by the collector of customs of a 40 per centum ad valorem duty on the merchandise involved, wire netting, imported at Los Angeles, Calif., under the provisions of paragraph 399 of the Tariff Act of 1922.

In the protest several claims were made, but in the lower court and here the only claim relied upon by the importer is that the merchandise was properly dutiable under paragraph 312 of said act and fell under the provision, "all other structural shapes of iron or steel," at 20 per centum ad valorem. We think the other claims require no consideration here.

The two paragraphs of the Tariff Act of 1922 which are herein involved read as follows:

PAR. 312. Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, deck and bulb beams, and building forms, together with all other structural shapes of iron or steel, not assembled, manufactured or advanced beyond hammering, rolling, or casting, one-fifth of 1 cent per pound; any of the foregoing machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting, 20 per centum ad valorem; sashes, frames, and building forms, of iron or steel, 25 per centum ad valorem.

PAR. 399. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold or silver, or colored with gold lacquer, whether partly or wholly manufactured, 60 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

The record shows that the wire netting at bar, in the condition imported, is in rolls 36 inches wide, the wire of which comes in varying gauges—16, 17, 18, and 20 gauges, with meshes ranging from 1 to 2 inches—and that it is imported in this condition to comply with city ordinances which are in existence in practically every city in California. Most specifications provide that the rolls shall weigh about 78 pounds, be rolled on a core of not less than 4 inches, and have an outside diameter of not less than 15 inches. The netting is galvanized.

The witnesses refer to the merchandise as stucco netting. The record shows that it is used for no other purpose than for forming a net for holding stucco in the sides of structures; that it differs from poultry fencing in being heavier and being made to specifications, the

details of which specifications are ordinarily not found in poultry wire; that the netting at bar is considerably more expensive than poultry netting; that the netting goes on the outside of buildings or structures and is held by nails, placed in slats in strips, about one-fourth of 1 inch from the side of the wall of the structure so that the wire, when the wall is completed, will run through the center of the stucco.

Appellant contends that the record discloses that the wire is sufficiently strong to bear such strain and stress as may be placed upon it in holding the stucco, and that if the netting was taken from the stucco, the structure would collapse, and that, if it was used in sufficient quantities in cross sections or floors, it would carry a dead load in the same manner as a deformed bar. It is conceded that it was not generally used for the latter purpose.

The sole issue before us is determined by the answer to the question: Is the wire netting at bar to be regarded as a structural shape?

The appellant, in contending for a classification as a structural shape, argues at length that the merchandise meets the requirements of a structural shape as indicated by the court's opinion in the cases of *United States* v. *Henry L. Exstein Co.*, 16 Ct. Cust. Appls. 328, T. D. 43079, and *Simon, Buhler & Baumann* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537.

In the *Simon, Buhler & Baumann* case, *supra*, this court held that steel bars and grates, used in the construction of a brewery mash filter, were structural shapes within the meaning of paragraph 104, Tariff Act of 1913, which, as far as the issue is concerned here, was identical with the paragraph at bar, and in arriving at that conclusion the court held that the structural shapes provided for in the act went into many other kinds of structures than buildings, ships, and similar erections, and that it was intended by Congress, by the use of the term "other structural shapes of iron or steel," to indicate such shapes as those which possessed the capacity to sustain heavy weights and resist great tension, or both, and said:

\* \* \* Ordinarily speaking, "structure" carries with it the idea of size, weight, and strength, and it has come to mean anything composed of parts capable of resisting heavy weights or strains and artificially joined together for some special use. But however that may be, certain it is that the expression "structural shapes" does import to people in general a capacity to sustain heavy weights or to resist great tension or both, and the things denominated in paragraph 104 convince us that such were the "structural shapes" which Congress intended to subject to the duty therein prescribed.

In *United States* v. *Henry L. Exstein Co.*, *supra*, the foregoing language was quoted with approval, and, following that line of reasoning, the court, in holding rolled, deformed steel bars to be structural shapes, said that the merchandise might be regarded as upon the "border line"

as between material and structural shapes, and in the opinion further said:

* * * It is, and has been for years past, bought and sold in the markets of the United States and has been used precisely as other structural shapes of steel. It performs the same functions when so in use. The same impelling legislative reason which caused beams, girders, joists, and the other steel products eo nomine specified in said paragraph 312 to be placed there would equally apply to this material. Manifestly, some other forms and shapes of steel were in contemplation than these specifically mentioned, else the words "all other structural shapes of iron or steel" would not have been used.

Also, the following language was used at page 330:

* * * When a structure in which such material is used is completed, the said material assists in carrying both the dead and live loads of the building, has the capacity to resist great tension and compression, contributes to the stability of the structure, and becomes an integral part of the skeleton of the same. * * *

In commenting upon the character of the material, the opinion states:

* * · * the ends of the bars are usually bent in such a form that they can be anchored by means of stirrups, or otherwise, to the wall columns or laterals of the building, and, after having been so placed, are surrounded with concrete and become a permanent part of the building, and can not be removed without endangering the stability and strength thereof. * * *

In *United States* v. *Frank*, 15 Ct. Cust. Appls. 97, T. D. 42184, this court had under consideration steel-sheet piling with fabricated steel corner pieces, used, in many instances, in building bridge piers to form a cofferdam out of which the soil is drawn by dredge. The court there, following the reasoning of the *Simon, Buhler & Baumann* case, *supra*, stated that the piling was "so made as to combine the greatest strength with the least weight and is exclusively used in erecting structures." The court then quoted the definition of Webster's New International Dictionary (1925) for the words "structural shape," which is as follows:

Structural shape. Engin. & arch., the shape of a member especially adapted to structural purposes, esp. in giving the greatest strength with the least material. Hence, *colloq.*, any steel or iron member of such shape, as channel irons, I beams, T beams, etc., or, sometimes, a column, girder, etc., built up with such members,

and held the piling to be structural shapes.

In *Birtwell* v. *Saltonstall*, 39 Fed. 383, the following definition was given of a structural shape:

It appears from the evidence that, speaking in a broad commercial sense, the term "merchantable iron" is limited to rounds, squares, and flats; that anything else, such as beams, girders, angles, etc., having any special shape, and intended to be used in the form of a structure, is a structural shape.

Appellant contends that its merchandise meets the test of these cases. With this contention we can not agree. We do not think the wire netting is a structural shape within the meaning of the

provision in the paragraph relied upon by appellant. We do not regard it as being designed for such a use, or being capable of such a use as is indicated by the language in the paragraph for the structural shapes therein provided for. It is not designed to support any portion of the weight of the building except the outside stuccoed portion, and to hold that the wire which holds the stucco to the wall is a structural steel shape would, inevitably, lead us far afield. If deformed steel bars are on the border line, wire netting, we think, would be entirely beyond the border line. If steel-wire netting was to be regarded as a structural shape within the meaning of the paragraph, for the reasons contended for by appellant, it would be very difficult to differentiate between this class of merchandise and many other articles of iron or steel which go into the making of a building or structure, which clearly Congress did not contemplate as falling within the provision.

In *Amerlux Steel Corp.* v. *United States*, 18 C. C. P. A. (Customs) 449, T. D. 44700, this court, following the *Simon, Buhler & Baumann* case, *supra;* the *Henry L. Exstein Co.* case, *supra;* the *Frank* case, *supra;* and *Birtwell* v. *Saltonstall*, *supra*, held that steel plates, 30 to 60 feet in length, and 4 feet wide, with raised diamond-shaped projections on one side, chiefly used as flooring for boiler rooms, engine rooms, etc., were not structural shapes.

The Government further contends that, irrespective of other considerations, the merchandise can not be regarded as structural shapes inasmuch as it has been galvanized, and cites *Moore* v. *United States*, 1 Ct. Cust. Appls. 115, T. D. 31117. In view of our conclusions hereinbefore reached, it is not necessary for us to pass upon this question and we do not do so.

Appellant has complained of the fact that in the lower court the position was taken that the merchandise "lacks the inherent characteristics of such a shape and is certainly not *ejusdem generis* with the articles so designated in the law" and makes reference to the doctrine of *noscitur a sociis*.

This court has, on one occasion, at least, attempted to indicate a slight difference in the application of the two doctrines which it is not necessary to discuss here. *United States* v. *Imperial Wall Paper Co.*, 14 Ct. Cust. Appls. 280, T. D. 41886. We think the application of the rule of *ejusdem generis* to the issues in this case is proper.

Anderson's Dictionary of Law contains the following:

*Ejusdem generis.* L. Of the same kind or nature; of the same class.

In the construction of statutes, contracts, and other instruments, where an enumeration of specific things is followed by a general word or phrase, the latter is held to refer to things of the same kind as those specified.

In construing the general provision, "all other structural shapes of iron or steel," etc., we think it eminently proper to consider the

question as to whether the articles sought to be included within its terms are of the same kind, class or nature as the articles specifically named in the paragraph, such as "beams, girders, joists," etc.

This rule of interpretation is not to be regarded as controlling in all instances, *United States* v. *R. F. Downing & Co.*, 17 C. C. P. A. (Customs) 194, T. D. 43645, but it may be controlling where the proper construction of a tariff paragraph is in doubt and where the intent of the legislature is not otherwise more persuasively indicated. *United States* v. *Imperial Wall Paper Co., supra.*

We do not think the wire netting at bar is of the same class or nature as the articles specifically named, and this fact is at least one of the considerations which bring us to the conclusion that it should not be classified under paragraph 312.

Furthermore, there is nothing in the legislative history connected with paragraph 312 or its predecessors to indicate that it should be given the construction contended for by appellant. If any importance is to be attached to the legislative history, it would point in the opposite direction.

The judgment of the United States Customs Court is *affirmed.*

DISSENTING OPINION

GARRETT, Judge: I respectfully dissent from the conclusion of the majority in this case.

The record fully sustains the contention of appellant that the wire netting in issue is dedicated solely to use for the support of the stucco material. It has no other use whatsoever. It, or something of its nature, is absolutely indispensable in the construction of buildings, parts of whose outer walls are to be of stucco, a much-used kind of structure. It reinforces and sustains the stucco without which there would be no completed building. The stucco portion of the wall is not a mere ornamental feature but is an integral and essential part of the house.

The material is admittedly shaped to meet precisely the use to which it is put. In the stucco it does not, as of course, bear a weight or strain as great as that carried by a tee or an I-beam, but it does carry such weight or strain as is incident to its use at the place where used. For a stucco wall the wire netting is quite as essential as is a joist in the inner part of the building to support the floor or ceiling.

I am wholly unable to see any distinction in principle between the classification which should apply to the wire nettings for reinforcing stucco, and that which was applied to the steel bars for reinforcing concrete, in *United States* v. *Exstein Co.*, cited in the majority opinion.

The second quotation from the opinion in the *Exstein* case, given in the majority opinion in this case, might with entire propriety and, to my mind, with exact aptitude, be applied to the material here at issue.

I can not but feel that the majority opinion improperly narrows the construction of paragraph 312 and makes too limited an application of the *ejusdem generis* doctrine.