E. L. Soule & Co. *v.* United States (No. 3138)[1]

United States Court of Customs Appeals, February 17, 1929

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.

[Oral argument December 11, 1928, by Mr. Baldwin and Mr. Carter]

Before Graham, Presiding Judge, and Bland and Hatfield, Associate Judges

Bland, Judge, delivered the opinion of the court:

This appeal relates to the classification of *universal mill plates*, which are plates of steel, three-fourths of an inch thick, about 40 feet long, and varying in width from 8 to 18 inches. They were assessed by the collector of customs for duty at three-tenths of 1 cent per

[1] T. D. 43240.

pound under the following provision in paragraph 304 of the Tariff Act of 1922:

PAR. 304. * * * sheets and plates and steel not specially provided for; all of the foregoing * * * valued above 1 cent and not above 1½ cents per pound, three-tenths of 1 cent per pound; * * *.

Importer's protest against the collector's classification claimed that they were dutiable under paragraph 312 of said act as (*a*) building forms, (*b*) structural shapes, or (*c*) parts or sections of columns and posts. It was alternatively claimed that the merchandise was dutiable at 10 per centum or 20 per centum under paragraph 1459. The court below overruled the protest and held the goods to be dutiable as classified by the collector.

Paragraph 312 reads as follows:

PAR. 312. Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or *parts or sections of columns and posts*, deck and bulb beams, *and building forms*, together with all *other structural shapes* of iron or steel, not assembled, manufactured, or advanced beyond hammering, rolling, or casting, one-fifth of 1 cent per pound; any of the foregoing machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting, 20 per centum ad valorem; sashes, frames, *and building forms*, of iron or steel, 25 per centum ad valorem. (Italics ours.)

In this court the sole question that is presented is as to whether or not the universal mill plates are described and classifiable under paragraph 312; if not, they are unquestionably dutiable under paragraph 304.

There is no dispute as to the character, use, or process of manufacture of the importation. The universal mill plates are so named because they are made by a universal steel mill, which is solely a rolling process, and the plate is completed and in its imported form as it leaves the machine. The product of a universal mill differs from sheared steel plates in the fact that in the former the edges are rolled in the one rolling process while in the latter the edges must be sheared in order that they be straight.

The plates are made of so-called mild steel with definite specifications as to the carbon content, which is from 0.15 to 0.25, quality, and strength, which is from 55,000 to 65,000 pounds per square inch, to fit them for structural use in the making of steel frames in buildings, and are produced in special dimensions for that particular purpose. They are used for no other purpose than in the construction of columns, posts, beams, and girders by riveting them to angles, channels, I beams, and other structural shapes, in order that the column, girder, post, or beam may have greater strength.

When a post, beam, or girder is made by combining angles, channels, and other shapes with mill plates, the use of the mill plate is similar to the use of the other shapes, but the use of a mill plate differs from the use of angles, channels, I beams and other shapes to the

extent that the universal mill plate is never used by itself nor is it designed for such use, while the other shapes are designed to be used and are used by themselves.

The universal mill plates are sold to fabricating plants, which use them in the construction of the posts, columns, girders, and beams. Angles, channels, I beams, and other forms come in different lengths and like the universal mill plates are cut and fabricated for special uses.

Here we repeat the contention of the importer that the mill plates are *parts of columns and posts,* and are *building forms* and are *structural shapes of steel not assembled,* etc.

Just why the words "and building forms" appear twice in the paragraph, we are not called upon to decide. It will be noticed that the paragraph does not include, by name, other well-recognized structural shapes of steel such as zees and cross ties, although tees and angles are included. It is argued that "mill plate" is a definite name for a definite structural shape to the same extent as tees, beams, and channels are definite structural shapes. It will be noted that the provision does not specifically name mill plates. It is argued that if zees or any other well-recognized structural shapes not mentioned in the paragraph are dutiable under the paragraph, mill plates would necessarily be dutiable there also.

We will first dispose of the first contention of importer that the importation consists of "parts or sections of columns and posts."

Importer's witness Keefer testified that there was no difference between a post and a column. Exhibit 1, introduced in the trial of the cause, is a Pocket Companion by the Carnegie Steel Co., Pittsburgh, Pa., and on several pages of the book different kinds of columns are discussed in detail. It treats of columns made by riveting together different structural shapes, and also columns made by riveting together different structural shapes and mill plates, also of round and square cast-iron columns.

We conclude that mill plates are part of the material which goes into the manufacture of columns and posts; they are not parts of posts or columns since they are not dedicated to the making of either, although the evidence shows that they are materials used solely in the making of columns, posts, girders, and beams. As was well said by the learned Chief Justice Fischer, in speaking for the court below:

When so used, they form the top and bottom plates in I beams, angles, columns, posts, etc. But in their imported form and condition they bear no resemblance whatever to the beams, columns, posts, etc., of which they may ultimately become parts. In that respect they are unlike the girders, channels, and other structural forms and shapes which do not lose their identity as such by reason of further fabrication to fit them for the particular building job in which they are to be used. In the case of the girder, I beam, etc., it is the form or shape of the article as made which determines its identity and classification as a building

form, whereas the form or shape of the present plates in nowise differs from any ordinary plate of steel of similar dimensions. If it is merely because these plates are made exclusively for conversion into building forms that they are claimed to be so classifiable for tariff purposes, then with the same propriety would box lumber be classifiable as wooden boxes and box cardboard as cardboard boxes.

It might be contended that if the mill plates are not parts of posts or columns, then the words "or parts or sections of columns and posts" have no purpose to serve in the paragraph. It is sufficient to say that it is conceded that there are, in the commerce of the country, certain columns and posts which are cast or rolled, of iron or steel, in a completed form, which are recognized structural shapes, and that if these columns or posts are imported in parts or sections, they would be dutiable under the provision for "parts or sections of columns and posts." It seems obvious, however, that in order for the imported articles to be "parts or sections of columns and posts," they must have been designed for that particular purpose. The evidence shows that the mill plates in controversy do not answer this requirement. In other words, an article may be made up of components which were not parts but mere material before assembly.

As to the second contention that the mill plates are structural shapes of steel, not assembled, we think appellant's own witness has disposed of this question contrary to the contentions of appellant. C. R. Keefer, appellant's witness, who was manager of the export and import department of the importing company, and who was a man of much experience in dealing with this character of material, and the only witness who testified on the subject, testified as follows:

Q. Would you tell us what they are used for?—A. They are used for the fabrication of structural shapes.

Q. What kind of structural shapes do you mean?—A. For buildings.

Q. What kind of buildings?—A. Steel frame buildings.

    *        *        *        *        *        *        *

Q. In your experience have you become familiar with the term used in the trade, the term structural shapes?—A. Yes, sir.

Q. In your experience with that trade term, would it include or not include universal mill plates of the present type?—A. Universal mill plates are generally referred to separately.

Q. Separately from what? From the structural shapes?—A. When you mention structural shapes ordinarily you include the beams, channels, and angles.

Q. In your understanding has the term "structural shapes" been a general term or a specific one?—A. If you would put your question a little differently, and ask me if structural steel, instead of the term structural shapes, was ordinarily understood to include universal mill plates, I would answer that yes.

    *        *        *        *        *        *        *

Q. Did you or did you not, state that this merchandise is structural steel?—A. Yes, sir.

Justice WELLER. Now you know it to be structural steel?

The WITNESS. Yes, sir.

    *        *        *        *        *        *        *

Q. You call them structural steel and not structural shapes?—A. I call those items which are specifically mentioned at the beginning of paragraph 312, I call them structural shapes. I include in the designation structural steel, universal mill plates, ordered for the same specifications and used for the same purpose.

Q. But you wouldn't designate universal mill plates as structural shapes?— A. I would myself, yes; what I can't see is why a piece of flat steel is not shaped, as much as a piece of steel shipped in some other shape, a shape is a shape.

Q. And that is the only reason that you know of?—A. That I would designate them as structural?

Q. Yes.—A. No; I have said the use to which they are put and the class of material from which they are manufactured puts them in the class of structural steel.

Q. Is there any difference between structural shapes and structural steel?— A. No, sir.

The evidence as a whole, we think, shows what the paragraph indicates that structural shapes are more than mere material, more than structural steel. A structural shape may be used as the material for building something else, but, as we understand it, a structural shape such as a beam, channel, or any other of the shapes specifically mentioned in the paragraph may be and is used alone. This distinguishes the articles named in the paragraph from the ones at bar in so far as mill plates are never used alone, never used as a shape or a form, but always used as material for making shapes or forms.

Adverting to the third contention of the importer, there is no testimony as to what constitutes a building form, the briefs of counsel on both sides are silent as to this question, and we have found no applicable authority to which we may refer. The context of the paragraph indicates, however, that there is a distinction between a building form and a structural shape and we can not believe that the two phrases are synonymous. It will be noticed that "building forms" and "structural shapes" are both referred to in the first part of the paragraph and that "building forms" are referred to in the last provision of the paragraph—i. e., "sashes, frames, and building forms"; that the higher rate of duty of 25 per centum applies to building forms last named. In the last provision, "building forms" are assessed with sashes and frames, which are easily distinguishable from beams, girders, joists, etc. Without requiring extended discussion, we think it follows that if the importation can not be called a structural shape, it would be less appropriate to call it a building form.

The position of appellant seems to depend solely upon the proposition that *structural steel* should be read into the paragraph when Congress deliberately omitted it. Indeed, we can see no good reason why Congress should have omitted universal mill plates from the paragraph, especially in view of the meaning ascribed to "structural shapes" by the courts. In *Simon, Buhler & Baumann* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, this court said:

Although a structure has been defined to be a production composed of parts artificially joined together according to a plan and designed to accomplish a definite purpose it may well be doubted whether that definition any longer precisely and truly describes a structure as the word is generally and customarily used. Ordinarily speaking, "structure" carries with it the idea of size, weight, and strength, and it has come to mean anything composed of parts capable of resisting heavy weights or strains and artificially joined together for some special use. But however that may be, certain it is that the expression "structural shapes" does import to people in general a capacity to sustain heavy weights or to resist great tension or both, and the things denominated in paragraph 104 convince us that such were the "structural shapes" which Congress intended to subject to the duty therein prescribed.

But Congress, for some reason, saw fit to omit from the paragraph the words "universal mill plates" and also the words "structural steel," probably having in view the classification complications which might arise if they were inserted.

We recognize that it would seem to bring an incongruous result to hold mill plates, used solely as material in the construction of the steel framework of a building, dutiable at a different and higher rate of duty than shapes and forms of steel used with them, in so far as it is ordinarily the policy of the legislature to put a lower rate of duty upon material than upon a finished article. It would also bring an incongruous result for us to hold that materials used in connection with tees, zees, beams, and other structural shapes should have the same rate of duty as the finished shapes, since such a ruling would admit as structural shapes many kinds of steel used in a structure which Congress did not indicate should be included in the paragraph. Much as we would like to hold that the mill plates at bar are dutiable under paragraph 312, we find we are unable to do so without usurping the prerogative of the Congress.

The term "structural shapes of iron or steel" is to be found in the Tariff Acts of 1883, 1890, 1894, 1897, 1909, 1913, and 1922. The courts have been called upon on several occasions heretofore to determine whether or not certain iron or steel merchandise was dutiable under the "structural shapes" provision. Some of the decisions on this subject seem to be directly in point with the case at bar while others are not very helpful, except in so far as they point out the kind of iron and steel which has heretofore been regarded as "structural shapes."

Judge Colt in *Birtwell* v. *Saltonstall*, collector (39 Fed. 383), in the Circuit Court for the District of Massachusetts, as early as 1889, in construing Schedule C of the Tariff Act of 1883, held that iron work for the foundation or frame of the floor, which formed a complete floor foundation, was not a structural shape but was a manufacture of iron. There he said: "It appears from the evidence that, speaking in a broad commercial sense, the term 'merchantable iron' is

limited to rounds, squares, and flats; that anything else, such as beams, girders, angles, etc., *having any special shape, and intended to be used in the form of a structure, is a structural shape.*"

The Board of United States General Appraisers, in T. D. 12933 (G. A. 1484), held that wrought iron bars for use in the Holliwell system of roofs and skylights were dutiable under paragraph 137 of the Tariff Act of 1890 as "structural shapes of iron." Under the same act the Board of General Appraisers in T. D. 13698 (G. A. 1936) held that steel bulb bars used for deck beams in shipbuilding were dutiable as structural shapes of steel.

The Board of General Appraisers, in T. D. 19198 (G. A. 4119), classified ornamental ironwork consisting of tees, angles, and curves, representing leaves or decorations, from 2 to 3 inches in width, as dutiable under paragraph 125 of the Tariff Act of 1897, as "structural shapes of iron" for the sole reason that they were "manifestly shapes of iron for structural use."

In *Kuyper & Co.* v. *United States*, 5 Ct. Cust. Appls. 175, T. D. 34523, pieces of steel designed and constructed to be used as frames of automobiles, about 19 feet long, three-eighths of an inch thick, and from 4 to 9 inches wide, were held to be dutiable as pressed, sheared, or stamped shapes under paragraph 131 of the Tariff Act of 1909 rather than as structural shapes of steel under paragraph 121. This finding was based upon the following reasoning:

Paragraph 121 enumerates as dutiable thereunder articles which have been subjected to the more common steel processes of hammering, rolling, or casting. Paragraph 131 alone provides for "pressed, sheared, or stamped shapes." This merchandise is admittedly a pressed shape.

We are therefore of the opinion that it.is more specifically provided for in paragraph 131,  *  *  *.

In *Kuyper & Co.* v. *United States*, 7 Ct. Cust. Appls. 212, T. D. 36509, this court held that structural shapes of steel containing a nickel alloy were not "structural shapes of steel" under paragraph 104 of the Tariff Act of 1913 (the predecessor paragraph of par. 312) but were dutiable as "pressed plates."

In *Myers & Co.* v. *United States*, 12 Ct. Cust. Appls. 350, T. D. 40490, main rods and side rods, fastened to the drive wheels of railroad locomotives, were held not to be structural shapes of iron or steel, since a locomotive was not a structure within the meaning of the paragraph.

In *United States* v. *Frank*, 15 Ct. Cust. Appls. 97, T. D. 42184, this court had under consideration the classification of steel sheet piling. It there held that the merchandise was not dutiable under paragraph 304, *supra*, since the articles in controversy were fully manufactured and were not unfinished materials. The court there said:

We shall first discuss the correctness of the collector's classification of this imported merchandise, under paragraph 304, as steel not specially provided for. As we have before stated, the evidence shows this merchandise to be fully manufactured articles, ready for their ultimate use. They have distinctive names by which they are known in the trade—steel sheet piling and steel corner sheet piling.

Paragraph 304 and its predecessor paragraphs have been before the courts for construction on various occasions. We think a fair reading of these authorities will lead the mind to the conclusion that this paragraph was not intended to apply primarily to fully manufactured articles, such as were ready for their final use, but rather to articles manufactured to a degree, but material for other subsequent manufacturing processes.

In *United States* v. *Henry L. Exstein*, 16 Ct. Cust. Appls. 328, T. D. 43079, deformed steel bars, used for concrete reinforcement were held to be structural shapes rather than steel bars under paragraph 304, *supra*. There, again, the case turned largely upon the provision of the article being a finished one and a shape used in the frame structure of a building and was not in any sense a material used in the making of a shape. In the opinion the court said:

The only question for our decision is whether the court below erred in holding, under this proof, that said material constitutes "structural shapes" of steel.

We incline to the view there was no error in so holding. It is true, the present case presents for consideration an importation which might be considered upon the border line between material, such as we have held is covered by said paragraph 304 (*United States* v. *Frank*, 15 Ct. Cust. Appls. 97; T. D. 42184), and structural shapes, as provided for by said paragraph 312.

The two last-cited cases, both of which construe paragraph 312, would seem to support our conclusions herein reached and must be regarded as controlling.

The provision for steel plates in paragraph 304 seems to aptly cover the merchandise at bar, and since the universal mill plates are not provided for in the more specific paragraph 312, nor elsewhere, it follows that the classification of the collector was correct and the judgment of the United States Customs Court must be and is *affirmed*.