AMERLUX STEEL CORP. *v.* UNITED STATES (No. 3399)[1]

United States Court of Customs and Patent Appeals, March 2, 1931

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.
*Thomas J. Doherty*, amicus curiæ.

[Oral argument February 3, 1931, by Mr. Baldwin, Mr. Folks, and Mr. Doherty]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise involved in this suit consists of checkered, or raised diamond, steel floor plates.

It was classified and assessed for duty, by the collector of customs, under paragraph 304 of the Tariff Act of 1922, at three-tenths of 1 cent per pound, as steel plates not specially provided for.

The importer protested, claiming the assessment should be one-fifth of 1 cent per pound under paragraph 312 of said act as "building forms" or "structural shapes."

The protest was overruled by the Customs Court, and the importer has appealed.

The pertinent portions of the contesting paragraphs read as follows:

PAR. 304. * * *; sheets and plates and steel not specially provided for; * * * valued above 1 cent and not above 1½ cents per pound, three-tenths of 1 cent per pound; * * *

PAR. 312. Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, deck and bulb beams and building forms, together with all other structural shapes of iron or steel, not assembled, manufactured or advanced beyond hammering, rolling, or casting, one-fifth of 1 cent per pound; * * *

[1] T. D. 44700.

Two witnesses were called in behalf of protestant. The Government called no witnesses, but formally introduced the appraiser's report.

From the record in the case the Customs Court made the following findings of fact, which we think correct:

It appears from the record that these plates are chiefly used as flooring in buildings, boiler rooms, and engine rooms, and that they are sometimes used in the construction of platforms and steps for fire escapes. The sample in evidence shows that one surface of these plates has, at given intervals of space, a small diamond or similar design formed by ridges raised slightly above the surface to prevent slipping by those walking thereon. The articles are imported in fixed lengths ranging from 30 feet to 60 feet, and after importation are cut to shorter lengths suitable for their particular use.

It may be added to the foregoing findings that the record shows that the articles at issue are about a quarter of an inch in thickness; that they are produced in stock lengths and after importation are generally cut to a size to fit the job in hand, although occasionally it happens that they can be used in the exact sizes imported, and that they are fastened to other parts of the building in which used by rivets or bolts, it being necessary, apparently in all instances, to drill the holes for receiving such bolts and rivets. The width of the articles ranges from 30 inches to 4 feet.

In its brief in support of the collector's classification the Government first directs our attention to the legislative history of the respective paragraphs and to certain court decisions antedating the act of 1922.

The first of these cases is that of *Hill* v. *Wood & Co.*, 163 Fed. 51, decided by the Circuit Court of Appeals, Third Circuit, June 18, 1908. The appeal was from a decision of the Circuit Court for the Eastern District of Pennsylvania, T. D. 28655, in which, without opinion, the latter court affirmed a decision of the Board of General Appraisers (now the United States Customs Court), T. D. 25915, holding certain steel plates, measuring 12 feet in length by 59 inches in width and five-sixteenths of an inch in thickness, smooth on one side and checkered on the other, intended to form the flooring of a boiler room, dutiable as "plates * * * not specially provided for" under paragraph 135 of the Tariff Act of 1897.

The Circuit Court of Appeals affirmed the judgment of the Circuit Court.

It was evidently held by each of the tribunals passing upon the issue that the merchandise was neither a structural form or shape covered by paragraph 125, nor boilerplate, or other plate *ejusdem generis* therewith, covered by paragraph 126 of said 1897 act. The opinion of the board (now the court) expressly so held.

In the prevailing opinion of the Circuit Court of Appeals it was said:

The pieces or parts involved in this case were intended for use in the construction of the floor of a boiler or engine room, and were especially adapted to form such a floor. These facts were found by the general appraisers, and investigation of the entire evidence has convinced us, not only that they were correctly found, but also that the court below was right in accepting the board's determination that the provision of paragraph 135 for "plates * * * in all forms and shapes not specially provided for," covered these articles.

Afterward there arose another suit, evidently by the same importer, involving similar merchandise, wherein the issue appears to have been directly between paragraphs 126, the boilerplate, etc., paragraph, and 135 of the same act—1897.

The Board of General Appraisers (now the United States Customs Court) in an opinion, T. D. 29405, G. A. 6834, 16 Treas. Dec. 382, took the same view that was taken in *Hill* v. *Wood & Co.*, *supra*, the board, after referring to the latter case, saying:

On appeal * * * the board was affirmed by the circuit court of appeals, third circuit, in *Hill* v. *Wood* * * *. The Treasury Department has announced its acquiescence in the court rulings referred to (T. D. 29170), and we consider the matter of the proper classification of these steel floor plates as judicially determined.

Paragraph 135, act of 1897, was again held applicable.

This latter case was decided December 10, 1908, and there was no appeal from the board's decision.

After the decision in those two cases and prior to the importation here involved, the tariff acts of 1909, 1913, and 1922 were passed.

While there have been some alterations and changes in language and rates in the several acts, a careful examination leads us to conclude that these changes are not of a character which indicates any purpose on the part of the legislature to do other than formulate its legislation in the light of these decisions and, in conformity therewith, accepting the classification fixed by the judicial tribunals in the quoted decisions.

Paragraphs 131 of the act of 1909, 110 of the act of 1913 and 304 of the act of 1922 appear to us to provide for the merchandise here at issue as same was classified by said decisions under paragraph 135 of the act of 1897, while paragraphs 121 of the act of 1909, 104 of the act of 1913, and 312 of the act of 1922 appear to cover, so far as here applicable, that which was included in paragraph 125 of the act of 1927.

It is not deemed necessary to lengthen this opinion by here quoting the several paragraphs of the several acts.

In considering the legislative history of the paragraphs we have examined the Summary of Tariff Information, 1920, prepared for use of the Committee on Ways and Means of the House of Representa-

tives, in formulating the bill which eventuated in the law of 1922, and also in the summary furnished in 1921 to the Committee on Finance of the Senate.

In the latter we find it stated at page 380:

Sheets and plates are pieces of iron and steel ranging generally from 6 to 200 inches in width and cut to various lengths. Plates have a thickness of one-hundred and forty-one thousandths of 1 inch. This thickness corresponds to No. 10 wire gauge.

In the former document, the one furnished the House, wherein the bill originated (and no amendment by the Senate materially altered the House language so far as the issue here is concerned), at page 195, it was said:

Plates are pieces of iron and steel generally 6 to 200 inches in width, cut to various lengths, and of a thickness of from No. 10 wire gauge (approximately %₆₄ inch) to 2 inches. Sheets are similar but thinner pieces of iron and steel.

We are quite convinced, therefore, that when all of the information, as contained in these summaries and in the cited decisions, that was before the Congress when the law was enacted, is considered together, it should be held, as the Government insists, that the doctrine of legislative sanction of judicial interpretation applies to the issue here raised.

The proof in the instant case does not show, or attempt to show, a commercial designation different from the common meaning of the term, steel plates not specially provided for, and, in our opinion, no facts are proven which take the issue from the control of *Hill* v. *Woods, supra.*

Under this view, we do not deem it necessary to enter upon a further discussion of structural steel, steel plates, etc., nor an analysis of other cases referred to in the respective briefs, such as *Simon, Buhler & Baumann (Inc.)* v. *United States,* 8 Ct. Cust. Appls. 273, T. D. 35537, cited by the court below; *United States* v. *Frank,* 15 Ct. Cust. Appls. 97, T. D. 42184; *Birtwell* v. *Saltonstall,* 39 Fed. 383, and *United States* v. *Exstein,* 16 Ct. Cust. Appls. 328, T. D. 43079.

In the case of *Soule & Co.* v. *United States,* T. D. 42909, the United States Customs Court had occasion to pass upon the precise issue here involved, and its decision therein, rendered July 31, 1928, was in line with the former holdings cited and in harmony with its decision in the instant case. The *Soule* case was appealed and decision affirmed by us, 16 Ct. Cust. Appls. 524.

The issue seems clearly to be determined by *Hill* v. *Wood & Co., supra.*

The judgment of the Customs Court is *affirmed.*