UNITED STATES *v.* JULIUS BLUM & Co., INC. (No. 4151)[1]

[1] C. A. D. 12

United States Court of Customs and Patent Appeals, October 31, 1938

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard H. Welsh* special attorney, of counsel), for the United States.
*Siegel & Mandell* for appellee.

[Oral argument October 10, 1938, by Mr. Welsh and Mr. Mandell]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division.

Merchandise, consisting of steel sections varying in length from 18 to 20 feet, in width from 15/16ths to 2 5/8ths inches, and in weight from 60/100ths of a pound to 2 17/100ths pounds to the lineal foot, described on the invoice as "structural angles and channels," was assessed for duty by the collector at the port of New York as steel, not specially provided for, at eight-tenths of 1 cent per pound under paragraph 304 of the Tariff Act of 1930.

The importer protested the collector's assessment, claiming the merchandise to be dutiable at one-fifth of 1 cent per pound under the provisions of paragraph 312 of that act.

The provisions in question read:

PAR. 304. * * * and steel not specially provided for; all the foregoing * * * valued above 2½ and not above 3½ cents per pound, eight-tenths of 1 cent per pound * * *.

PAR. 312. Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, and deck and bulb beams, together with all other structural shapes of iron or steel, not assembled, manufactured or advanced beyond hammering, rolling, or casting, one-fifth of 1 cent per pound; any of the foregoing machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting, 20 per centum ad valorem; sashes and frames of iron or steel, 25 per centum ad valorem; sheet piling, one-fifth of 1 cent per pound.

On the trial below, considerable evidence was introduced by the parties. That introduced by the importer—appellee—included several documentary exhibits and illustrative samples of the imported merchandise.

It is contended here by counsel for appellee that the evidence establishes that the imported articles are used in buildings and bridges "to add strength, increase load carrying capacity, and capacity to resist wind pressure of the structure by adding strength and stability to the various parts in connection with which they are used," and that, therefore, such articles are dutiable under the provisions of paragraph 312, *supra*.

It is contended by counsel for the Government that there is no evidence of record tending to establish that the involved articles have the capacity to sustain relatively heavy weights or to resist great tension, or that they were manufactured, designed, or adapted to give the greatest strength with the least material; that it clearly appears from the evidence in the case that they were not designed for use, and, in fact, are not used, to sustain relatively heavy weights or to resist great tension in buildings, bridges, or other structures; that as the trial court held that the involved articles were structural shapes, within the purview of the first part of paragraph 312, *supra,* on the sole ground that they were chiefly used in the construction of buildings and bridges, it clearly misapprehended the law applicable to the issues in the case, and its judgment should, therefore, be reversed.

It clearly appears from the record, and the trial court so held, that the involved articles were "produced by a rolling process from ingots of steel heated to a white heat," and were not "assembled, manufactured, or advanced beyond hammering, rolling, or casting."

In its decision, the trial court recited at some length the testimony of each of the witnesses for the parties; described the exhibits in the case; referred to its decision in the case of *Julius Blum & Co., Inc.* v. *United States,* Abstract 34544, decided July 21, 1936, wherein it was held that merchandise like that here involved was dutiable as structural shapes of steel within the purview of the first part of paragraph 312, *supra,* and said:

In our opinion the facts that the steel shapes herein are used for many architectural purposes, that in their imported condition they may not be designed to be used in any particular bridge, building, or structure, or that said shapes are merely material, are all entirely irrelevent to the issue, as a reading of the first part of paragraph 312 amply demonstrates. The only question at issue is whether or not these steel shapes are structural shapes within the meaning of said paragraph, and that fact must be determined in the light of prevailing decisions on that subject.

The court then reviewed and quoted from several decisions of the Customs Court and this court, including those in the cases of *George S. Bush & Co., Inc.* v. *United States,* T. D. 33017, G. A. 7410, 23 Treas. Dec. 537; *Simon, Buhler & Baumann (Inc.)* v. *United States,* 8 Ct. Cust. Appls. 273, T. D. 37537; *United States* v. *Frank,* 15 Ct. Cust. Appls. 97, T. D. 42184; *United States* v. *Henry L. Exstein Co., Inc.,* 16 Ct. Cust. Appls. 328, T. D. 43079; *E. L. Soule & Co.* v. *United States,* 16 Ct. Cust. Appls. 524, T. D. 43240; *Amerlux Steel Corp.* v. *United States,* 18 C. C. P. A. (Customs) 449, T. D. 44700, and *Judson Freight Forwarding Co.* v. *United States,* 20 C. C. P. A. (Customs) 229, T. D. 46038; referred to its decision in the case of *Judson Freight Forwarding Co.* v. *United States,* T. D. 45200, 60 Treas. Dec.

645, which was reversed by this court (20 C. C. P. A. (Customs) 229, T. D. 46038), and said:

> \* \* \* This court did not consider the evidence as establishing that such angles were chiefly used for structural purposes, or that they constituted structural shades [shapes] as that term was defined in *Simon* v. *United States, supra*. Such shapes, according to that definition, implied "the idea of size, weight, and strength \* \* \* capable of resisting heavy weights or strains," and we did not regard the proof as so characterizing said angles. *Moreover, we expressed the view that the word "structural" in said paragraph operated to make chief use for such purposes the rule or test of classification thereunder*, just as the *term "agricultural" made chief use the test in determining what constituted an agricultural implement*, as held in *Boker* v. *United States*, 6 Ct. Cust. Appls. 243, T. D. 35472.

On appeal, however, our decision in *Judson Freight Forwarding Co.* v. *United States, supra*, was reversed. See *Judson Freight Forwarding Co.* v. *United States*, 20 C. C. P. A. 229, T. D. 46038. In its decision the appellate court pointed out that the *Simon* case, *supra*, which we followed in our decision, did not intend to define "structural shapes" except for the purposes of that case; that the congressional history of paragraph 312 disclosed that Congress made no distinction between light and heavy structures; and that since angles were *eo nomine* provided for they must be held classifiable thereunder regardless of their size.

We are clear as to the reasoning of the appellate court in so classifying the angles in view of the *eo nomine* provision therefor and the congressional intent to make no distinction as to the size. But we are unable to glean from said decision the precise rule applicable to interpreting the paragraph, particularly the provision covering "all other structural shapes of iron or steel," which has been literally reenacted in paragraph 312 of the Tariff Act of 1930. The court said:

> From what has been said it is obvious that the involved angles are within the common meaning of the terms "angles" and "structural shapes." Furthermore, after a careful consideration of the record, we find ourselves in accord with the trial court's holding that the evidence is wholly insufficient to establish that either of those terms has a meaning in the trade and commerce of the United States different from its common meaning. However, we find ourselves out of harmony with that part of the court's decision holding that the doctrine of chief use should be applied for the purpose of determining the scope of the provisions of paragraph 312.

It will be observed that in the *Exstein* case, *supra*, steel bars used in reenforcing concrete were held classifiable as structural shapes, as claimed by the plaintiffs, rather than as steel bars, as classified by the collector. The court there said:

> \* \* \*. The classification of such steel will, in each case, depend upon its designation, character, and use, whether it ought, properly, to be considered as material or structural shapes and forms.

Furthermore, in the paragraph immediately preceding the one containing said quotation from *Judson Freight Forwarding Co.* v. *United States*, 20 C. C. P. A. 229, T. D. 46038, the appellate court set forth the definition of "structural shapes" as "the shape of a member especially adapted to structural purposes," and angle iron was defined as "a bent piece used for joining two or more parts of a composite structure at an angle," and more specifically as "a rolled iron or steel bar of L section, largely used in structural ironwork."

> *We do not believe it was the intention of the appellate court to hold that in construing the words "other structural shapes of iron or steel" the rule of chief use is wholly inapplicable, particularly since it has been the test applied to analogous tariff provisions, such as agricultural implements*, scientific instruments, surgical instruments, table, kitchen, household, and hospital utensils, etc.

\*          \*          \*          \*          \*          \*

In view of the decisions both of this court and of the appellate court, the question to be decided in the instant case is whether these heavy steel shapes are "other structural shapes" within the meaning of paragraph 312 of the Tariff Act of 1930.

According to the uncontradicted evidence *they are chiefly used in the construction of buildings and bridges. They are therefore shapes of steel within the common and ordinary meaning of the word "shape," and since they are chiefly used in building structures they are structural shapes within the meaning of said paragraph 312.* [Italics ours.]

We deem it unnecessary to review the decisions in all of the cases cited by the trial court.

It is true that in the *Judson Freight Forwarding Co.* case, *supra,* the provisions of paragraph 312 of the Tariff Act of 1922 were under consideration; however, so far as the issues in this case are concerned, those provisions were substantially the same as those contained in the paragraph now under consideration. In our decision in that case we quoted the following definition of "structural shape" from Webster's New International Dictionary:

Structural shape, *Engin. & Arch.*, the shape of a member especially adapted to structural purposes, esp. in giving the greatest strength with the least material. Hence, Colloq., any steel or iron member of such shape, as channel irons, I beams, T beams, etc., or, sometimes, a column, girder, etc., built up with such members.

We quoted with approval the following from our decision in the case of *United States* v. *Henry L. Exstein Co. (Inc.), supra:*

* * * it is argued that if the deformed bars in issue here are to be treated as structural shapes of steel, then all steel which goes into a structure and becomes a part thereof must be so treated. This does not follow, and this opinion should not be taken as so holding. The *classification of such steel will, in each case, depend upon its designation, character, and use, whether it ought, properly, to be considered as material or structural shapes and forms.* [Italics not quoted.]

We quoted from the Summary of Tariff Information, 1920, page 185, and, among other things, said:

* * * Accordingly, we are of opinion that the Congress did not intend to limit the term "structural shapes" to such shapes of iron and steel as were used only in large structures, but that it intended to include therein all structural shapes of iron or steel having the "capacity to sustain [relatively] heavy weights or to resist great tension or both," and designed for the utilization of such capacity, to be used as such shapes, and suitable for such use in buildings, bridges, ships, cars, etc., requiring either heavy or light sections, or both, and also in certain "other articles *requiring light sections*" only. [Italics quoted.]

Furthermore, in our decision in that case, we expressly disapproved of that part of the trial court's decision holding that the "doctrine of chief use" should be "applied for the purpose of determining the scope of the provisions of paragraph 312."

Obviously, if the doctrine of chief use is applicable at all it is controlling, and all shapes of iron or steel not "assembled, manufactured, or advanced beyond hammering, rolling, or casting," chiefly used in

the construction of buildings, bridges, etc., are, regardless of their character, dutiable under the first part of paragraph 312, *supra.* Such a construction of the provisions in question, with the attending results, plainly was not within the contemplation of the Congress.

The character of the involved articles, together with the uses for which they were designed and to which they are put, should be considered in determining their dutiable status. *United States* v. *Henry L. Exstein Co., Inc., supra; Judson Freight Forwarding Co.* v. *United States, supra.* The "doctrine of chief use," however, has no application to the issues in the case.

In the case of *E. L. Soule & Co.* v. *United States, supra*, steel plates, known as universal mill plates, designed for use and *chiefly used* for structural purposes in buildings and other structures, being mere "material for making shapes and forms," were held not to be structural shapes or "parts or sections of columns or posts" within the purview of paragraph 312 of the Tariff Act of 1922.

In view of the fact that in the instant case the trial court erroneously applied the "doctrine of chief use," and failed to express its views as to the application of the evidence to the issues presented as herein defined, we find it necessary to reverse the judgment and remand the cause for further consideration.

The judgment is, accordingly, *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.