(C.D. 2667)

JOHN A. STEER CO., A/C CHARLES A. KOONS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 2, 1966)

*Sharretts, Paley & Carter* (*Donald W. Paley* and *Gail T. Cumins* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff* and *Harvey A. Isaacs*, trial attorneys), for the defendant.

Before RAO, FORD, and LANDIS, Judges

LANDIS, Judge: The merchandise involved herein is described on the invoices as "Seamless Steel Tubes, with plain square ends, made

from API Grade J–55 material, in random lengths maximum 30 Ft. Suitable for the manufacture of screwed couplings for API Casing." At the hearing, three protests, Nos. 286069–K, 286070–K, and 287300–K were consolidated for trial with protest 282306–K.

The merchandise was classified by the collector of customs under paragraph 328, Tariff Act of 1930 (19 U.S.C. § 1001, par. 328), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, as other iron or steel tubes, finished or unfinished, not specially provided for, and assessed thereunder at 12½ per centum ad valorem.

The plaintiff claims that the merchandise is properly classifiable as structural shapes, not assembled, manufactured or advanced beyond hammering, rolling, or casting, dutiable at the rate of 0.1 cent per pound under paragraph 312 of the said tariff act (19 U.S.C. § 1001, par. 312), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

The pertinent provisions of the Tariff Act of 1930, as modified, follow:

Paragraph 328, as modified by T.D. 52373:

Finished or unfinished iron or steel tubes not specially
    provided for:

   \*       \*       \*       \*       \*       \*       \*
    Other_____ 12½% ad val.

Paragraph 312, as modified by T.D. 52739:

Beams, girders, joists, angles, channels, car-truck chan-
    nels, tees, columns and posts, or parts or sections of
    columns and posts, and deck and bulb beams, together
    with all other structural shapes of iron or steel:
        Not assembled, manufactured or advanced beyond
            hammering, rolling, or casting_____ 0.1¢ per lb.

At the hearing, an oral stipulation of the facts was agreed to between counsel and entered on the record. The essential paragraphs of stipulated facts are as follows:

\* \* \* It is hereby stipulated and agreed that the merchandise consists of seamless steel tubes, made to American Petroleum Institute specifications, J–55, to be made into couplings for oil well casing. Said merchandise in its condition as imported is not ready for use as a coupling. It must be cut to specified lengths and threaded before it is a coupling. Said merchandise is designed and intended to be made into couplings for oil well casing after importation and is chiefly so used. Said merchandise in its condition as imported is not assembled, manufactured or advanced beyond hammering, rolling or casing [sic].

It is further stipulated and agreed that the American Petroleum Institute specifications for casing, tubes and drill pipe may be re-

ceived in evidence as Plaintiff's Exhibit 1. Counsel agree that although these specifications were published in March, 1963, they are the same as the specifications at the time of importation in all material respects.

*     *     *     *     *     *     *

* * * it is further stipulated and agreed that couplings are used to join one end of a casing joint to another in the construction of an oil well. The couplings are not a substitute for and are not used for the purpose for which casing joints are used, but are solely to join one end of a casing joint to another in the construction of an oil well * * *.

Supplementing the above stipulation, the record also affords descriptive data as to how an oil well structure is put together. We find substantial verification of this operation in *Humble Oil & Refining Co. et al.* v. *United States*, 32 Cust. Ct. 32, C.D. 1577; also in *United States* v. *The Winkler-Koch Engineering Co.*, 41 CCPA 121, C.A.D. 540. These cases inform us how an oil well is drilled, how the casing sections or members are joined together and lowered into the drilled hole, until an entire unified structure is completed of such casing sections. It is readily understandable, after reading these two cases, that this completed arrangement of casings joined together comprise a structure and, therefore, each section of casing thereof was classifiable as a structural shape.

Plaintiff and defendant both cite the *Humble Oil* and the *Winkler-Koch* cases, *supra*, in their briefs. We must observe, however, that these two cases deal with "casing," whereas the imported merchandise at bar is not casing. It is invoiced as "* * * Tubes * * *. Suitable for the manufacture of screwed couplings for API Casing."

Webster's New International Dictionary (1945 edition) defines casing as:

* * * Something that incases * * *. An enclosing framework * * *. A metal pipe used to case a well * * *.

Reading further into the *Humble Oil* and the *Winkler-Koch* cases, *supra*, it is clear that tubing is encased in the casing structure, and it is the tubing which carries the oil, the casing housing the tubing. From *United States* v. *Humble Oil & Refining Co., Leslie B. Canion, et al.*, 46 CCPA 138, C.A.D. 717, which refers to *United States* v. *The Winkler-Koch Engineering Co.*, 41 CCPA 121, C.A.D. 540, it is noted: (a) Sections of pipe of an oil pipe *line* are not structural shapes since the primary, if not the sole function of such pipes is the transmission of oil; and while they may be required to resist high stresses, they do not serve to strengthen or support any other element. (b) Tubing, in casing, is not a structural shape.

Tubing, as distinguished from casing, is defined as:

\* \* \* A series of tubes; tubes, collectively; a length or piece of a tube; \* \* \* *Mach.* A special grade of high-test pipe fitted with threads and couplings of special design. [Webster's New International Dictionary (1945 edition).]

The sole issue is whether the plaintiff has established its claim that the imported merchandise at bar should be classified as structural shapes under the provisions of paragraph 312, *supra.*

The court has for its consideration on the subject herein certain pertinent cases which point out that a fixed definition of a structural shape, or even a rigid description of such an article, is not available. Each case must be judged by its own facts. *The Frost Railway Supply Co.* v. *United States,* 39 CCPA 90, C.A.D. 469; also *Otis McAllister & Co.* v. *United States,* 27 CCPA 4, C.A.D. 52, affirming T.D. 49236.

A leading case on this subject, which we have examined, is *Simon, Buhler & Baumann (Inc.)* v. *United States,* 8 Ct. Cust. Appls. 273, T.D. 37537, 34 Treas. Dec. 157, which is frequently referred to as the "pioneer case" on structural shapes.

In the *Simon, Buhler* case, the merchandise was steel channel irons, frames, plates, centerpieces, steel bars or grates, posts, and heads or end pieces of cast iron, all material ready to be assembled as parts of a ponderous mash filter, approximately 30 feet long, $4\frac{1}{2}$ feet wide, $4\frac{1}{2}$ feet deep. The court held that the mash filter was a structure and the parts thereof were structural shapes. This is, of course, an early case on structures and structural shapes and affords enlightenment towards later cases on the subject. Proper interpretation of the terms must be determined by the court in each challenged classification.

However, between the *eo nomine* provision of paragraph 312, along with dicta on the *ejusdem generis* aspects of the subject, in conjunction with the cases adjudicated on structural shapes, a basis of judgment becomes quite discernible as to what is or what is not a structural shape.

The term "structural shape," as stated in *Judson Freight Forwarding Co.* v. *United States,* 20 CCPA 229, T.D. 46038, and quoted in *C. J. Tower & Sons* v. *United States,* 42 CCPA 161, C.A.D. 589:

\* \* \* include therein all structural shapes of iron or steel having the "capacity to sustain [relatively] heavy weights or to resist great tension or both," and designed for the utilization of such capacity, to be used as such shapes, and suitable for such use in buildings, bridges, ships, cars, etc., requiring either heavy or light sections, or both \* \* \*.

Certain characteristics, therefore, attributed to a structural shape are (1) that it have the capacity to sustain heavy weights or resist great tension (*Judson Freight Forwarding Co., supra; C. J. Tower & Sons, supra*); (2) that it combine the greatest strength with the least material (*United States* v. *Frank,* 15 Ct. Cust. Appls. 97, T.D. 42184);

and (3) that it be designed for use in a structure (*E. L. Soule & Co.* v. *United States*, 16 Ct. Cust. Appls. 524, T.D. 43240). It is to be noted that no one of the foregoing characteristics alone is sufficient to establish an item as a structural shape. Its intended purpose and manner of use, along with its actual use, require consideration by the court. *United States* v. *Julius Blum & Co., Inc.*, 26 CCPA 168, C.A.D. 12; *Judson Freight Forwarding Co., supra;* and *United States* v. *Henry L. Exstein Co., Inc.*, 16 Ct. Cust. Appls. 328, 334, T.D. 43079.

*E. L. Soule & Co.* v. *United States, supra*, involved universal mill plates of steel, about 40 feet long, varying in widths from 8 to 18 inches, 3/4-inch thick, which were used as material to make up columns, posts, girders, and beams. The mill plates were held not to be structural shapes since they were never used alone except in combination with angles, channels, and other structural shapes, being designed for such use only, while such structural shapes as specifically mentioned in paragraph 312, are designed for use and are used by themselves. Structural shapes are more than mere material or mere structural steel.

A further attribute of the article under consideration as a structural shape, is its primary function for which it was designed. Allied thus with this reasoning, the court in the *Soule* case, *supra*, rejected a further claim of the importer, i.e., that the universal mill plates were structural shapes of steel, not assembled.

The item to be a "structural shape," in addition to other functions, must be used as a support for the structure (*James Loudon & Co., Inc., Arcadia Metal Products, Inc.* v. *United States*, 47 CCPA 73, C.A.D. 731), and such support must be the primary function of such article, not merely an incidental function. Quoting on this point from *United States* v. *Humble Oil & Refining Co., Leslie B. Canion, et al., supra*, the appeals court rejected the contention that certain steel tubing constituted a "structural shape," saying (pages 142–143):

We are of the opinion that the self-supporting function, which is incidental to the primary function of transporting oil through the well pipe, does not make the tubing a structural shape. * * *

We note also that neither line pipe nor well tubing bears any functional resemblance to the exemplars named in paragraph 312. Each of those exemplars is designed primarily, if not solely, to perform a supporting function, as distinguished from the primary function of the merchandise here * * *.

However helpful the cited and related cases might be on the subject of structural shapes in general, our attention is narrowed to only the imported merchandise at bar, involving, as stipulated, "steel tubes * * * to be made into couplings for oil well casing." The stipulation itself states, of the couplings intended to be manufactured from the

imported merchandise, that said couplings "* * * are solely to join one end of a casing joint to another * * *."

It is admitted that the tubing at bar is designed for couplings, not casings. Therein lies significant distinction.

Webster's New International Dictionary (1945 edition) :

coupling *n.* * * * 5. *Mach.* A device or contrivance that serves to couple or connect the ends of adjacent parts or objects; * * * a pipe coupling, which connects two lengths of pipe. * * *

The primary purpose of a coupling, obviously is to *couple* together two ends of pipes or tubes. Alone, it is not a structural shape. See *E. L. Soule & Co.* v. *United States, supra.* Its function is to join together members of a structure, but it itself is not such a member. *Only incidental* is its function of receiving pressures and lending support to the structure. This important feature alone suffices, in the case at bar, to obviate classification of a coupling as a structural shape under pargaraph 312, *supra.*

In *Timber Engineering Company, Inc.* v. *United States*, 22 Cust. Ct. 1, C.D. 1148, certain split rings fabricated of cold-rolled steel, which served as timber connectors in a structure, were held not to be structural shapes, the court stating that they were really a substitute for bolts, and bolts, like nails, rivets, and screws, are not structural shapes. It is clear that such connectors, not unlike the couplings in the instant case, serve the incidental function of connecting structural members. Although such connectors in a sense do become integral with the structure, this does not constitute them structural members. Their integration does not alter their primary function of connecting or joining. We cannot accept, therefore, the plaintiff's argument urging that because couplings become an integral part of the casing structure, they are structural shapes.

It might have been argued herein that any debate over couplings was premature, since the imported steel tubes in random lengths of approximately 30 feet were not in fact couplings, but merely alleged as suitable for the manufacture of such. Since couplings are not structural shapes in any event, and since the imported tubing is not yet couplings, but required cutting and threading, the merchandise at bar is quite removed from qualifying as a structural shape under the precedents established.

Referring again to *United States* v. *The Winkler-Koch Engineering Co., supra*, we are reminded that:

It is academic that the classification of merchandise for duty purposes is governed by its condition as imported * * *.

The stipulation itself establishes that the use of the imported tubes is not for tubing, as such. Hence, the tube use is excluded. Sugges-

tion that the tubes as imported were dedicated for use as couplings would be futile, since couplings themselves are not structural shapes. Therefore, whether as tubes or as couplings, the merchandise at bar is not classifiable as structural shapes under paragraph 312 of the tariff act, as modified, *supra*.

We have read the cases cited by the palintiff. *Baron Tube Co.* and *John S. James* v. *United States*, 39 Cust. Ct. 85, C.D. 1910; modified in 42 Cust. Ct. 10, C.D. 2059; reversed in 47 CCPA 69, C.A.D. 730, indicates that certain kinds of tubes may be structural shapes. That case dealt with tubes chiefly used in the construction of scaffolds, access stands for aircraft maintenance, "A" frames for swings, and towers for television antennas. That case has no application here.

On the record as submitted herein, and after analyzing the related authorities, particularly, to the extent pertinent, the *E. L. Soule & Co.* case, *supra*, together with the briefs of counsel, it is the opinion of this court, and we so hold, that the classification by the collector of the merchandise at bar under paragraph 328 of the Tariff Act of 1930, as modified, *supra*, as finished or unfinished iron or steel tubes, not specially provided for, at 12½ per centum ad valorem, is proper.

The protests are, therefore, overruled. The classification of the collector is affirmed.

Judgment will issue accordingly.