MYERS & Co. *v.* UNITED STATES (No. 2385).[1]

, LOCOMOTIVE DRIVING RODS—PARTS
   Main and auxiliary driving rods for locomotives, though parts of the locomotives, are not parts of the driving wheels within the provision of paragraph 324, tariff act of 1922, for parts of wheels for railway purposes; and this conclusion is in no way affected by the consideration that they are essential to the operation of the driving wheels, or by the fact that the driving wheels are counterweighted for the rods and can not be safely used, even as ordinary rolling wheels, without them.   Since they are parts of locomotives, they can not be parts of "other machines  *  *  *  not specially provided for," under paragraph 372.   Paragraph 322, by the provision for "all other railway bars made of iron or steel" obviously covers bars which are in no way connected with the construction of a railway locomotive.   A railway locomotive is not a structure so as to bring these rods within the provision of paragraph 312 for "all other structural shapes of iron or steel."   Paragraph 304, with its provisions for shafting, shapes of molded steel castings, and steel not specially provided for, was clearly not intended to cover such merchandise as this. The rods are not classifiable under paragraph 319 as forgings of iron and steel or of combined iron and steel; under paragraph 381, as piston rods and shafting; or under paragraph 327, as castings of iron or castings of malleable iron. Their residuary classification under paragraph 399 as miscellaneous manufactures of metal is approved.

United States Court of Customs Appeals, November 4, 1924 .

APPEAL from Board of United States General Appraisers, G. A. 8744 (T. D. 40008)
[Affirmed.]

*Gerry & Wakefield* for appellants.
*William W. Hoppin,* Assistant Attorney General (*Ralph Folks,* special attorney, of counsel), for the United States.

[Oral argument October 17, 1924, by Mr. Wakefield and Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:
Steel rods imported by appellants from Canada known as main rods, intermediate side rods, rear side rods and front side rods and

---

which fasten onto the drive wheels of railway locomotives, were classified by the collector under paragraph 399 of the act of 1922 at 40 per cent ad valorem as manufactures of metal.

Paragraph 399 of the act of 1922 is as follows:

Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 60 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

To this classification the importers, protested, claiming that the merchandise is covered and is dutiable as follows:

1. At 30 per cent ad valorem under the provisions in paragraph 372 for all other machines and parts thereof.

2. Or alternatively at 1¢ per pound under paragraph 324 providing for wheels for railway purposes and parts thereof.

3. Or alternatively at 1/10 of 1¢ per pound under paragraph 322 providing for all railway bars made of iron or steel.

4. Or alternatively at the applicable rate or rates according to value under paragraph 304 as bars whether solid or hollow.

5. Or alternatively at the applicable rate or rates according to value under paragraph 304 as shafting.

6. Or alternatively at the applicable rate or rates according to value under the provisions in paragraph 304 for all descriptions and shapes of molded steel castings.

7. Or alternatively at the applicable rate or rates according to value under paragraph 304 as steel not specially provided for.

8. Or alternatively at 25 per cent ad valorem under paragraph 319 as forgings of iron or steel or of combined iron and steel.

9. Or alternatively at 4¢ per pound under paragraph 381 providing for piston rods and shafting.

10. Or alternatively at 20 per cent ad valorem under the provisions of paragraph 327 for all castings of iron or castings of malleable iron.

11. Or alternatively at 1/5 of 1¢ per pound under the provisions of paragraph 312 for all other structural shapes of iron or steel.

12. Or alternatively at 20 per cent ad valorem under the provisions of paragraph 312 for all other structural shapes of iron or steel advanced beyond hammering, rolling, or casting.

Paragraphs 324, 372, 322, 312, 304, and 319 of the act of 1922 are as follows:

PAR. 324. Wheels for railway purposes, and parts thereof, of iron or steel, and steel-tired wheels for railway purposes, wholly or partly finished, and iron or steel locomotive, car, or other railway tires and parts thereof, wholly or partly manufactured, 1 cent per pound: *Provided,* That when wheels for railway purposes, or parts thereof, of iron or steel, are imported with iron or steel axles fitted in them, the wheels and axles together shall be dutiable at the same rate as is provided for the wheels when imported separately.

PAR. 372. Steam engines and steam locomotives, 15 per centum ad valorem; sewing machines and parts thereof, not specially provided for, valued at not

more than $75 each, 15 per centum ad valorem, valued at more than $75 each, 30 per centum ad valorem; cash registers and parts thereof, 25 per centum ad valorem; printing presses, not specially provided for, lawn mowers, and machine tools and parts of machine tools, 30 per centum ad valorem; embroidery machines, including shuttles for sewing and embroidery machines, lace-making machines, machines for making lace curtains, nets, and nettings, 30 per centum ad valorem; knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery or parts thereof, finished or unfinished, not specially provided for, 40 per centum ad valorem; all other textile machinery or parts thereof, finished or unfinished, not specially provided for, 35 per centum ad valorem; cream separators valued at more than $50 each, and other centrifugal machines for the separation of liquids or liquids and solids, not specially provided for, 25 per centum ad valorem; combined adding and typewriting machines, 30 per centum ad valorem; all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem: *Provided*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

PAR. 322. Railway fishplates or splice bars, and tie plates, made of iron or steel, one-fourth of 1 cent per pound; rail braces, and all other railway bars made of iron or steel, and railway bars made in part of steel, T rails, and punched iron or steel flat rails, one-tenth of 1 cent per pound.

PAR. 312. Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, deck and bulb beams, and building forms, together with all other structural shapes of iron or steel, not assembled, manufactured or advanced beyond hammering, rolling, or casting, one-fifth of 1 cent per pound; any of the foregoing machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting, 20 per centum ad valorem; sashes, frames, and building forms, of iron or steel, 25 per centum ad valorem.

PAR. 304. Steel ingots, cogged ingots, blooms and slabs, by whatever process made; die blocks or blanks; billets and bars, whether solid or hollow; shafting; pressed, sheared, or stamped shapes, not advanced in value or condition by any process or operation subsequent to the process of stamping; hammer molds or swaged steel; gun-barrel molds not in bars; alloys, not specially provided for, used as substitutes for steel in the manufacture of tools; all descriptions and shapes of dry sand, loam, or iron molded steel castings; sheets and plates and steel not specially provided for; all of the foregoing valued at not over 1 cent per pound, two-tenths of 1 cent per pound; valued above 1 cent and not above 1½ cents per pound, three-tenths of 1 cent per pound; valued above 1½ and not above 2½ cents per pound, five-tenths of 1 cent per pound; valued above 2½ and not above 3½ cents per pound, eight-tenths of 1 cent per pound; valued above 3½ and not above 5 cents per pound, 1 cent per pound; valued above 5 and not above 8 cents per pound, 1$\frac{7}{10}$ cents per pound; valued above 8 and not above 12 cents per pound, 2½ cents per pound; valued above 12 and not above 16 cents per pound, 3½ cents per pound; valued above 16 cents per pound, 20 per centum ad valorem: *Provided*, That on steel circular saw plates there shall be levied, collected, and paid an additional duty of one-fourth of 1 cent per pound.

PAR. 319. Iron or steel anchors and parts thereof; forgings of iron or steel or of combined iron and steel, not machined, tooled, or otherwise advanced in condition by any process of operation subsequent to the forging process, not specially provided for, 25 per centum ad valorem.

It is chiefly contended by the importers that this merchandise falls clearly within paragraph 324 as parts of wheels for railway purposes.

At the hearing before the board a number of expert witnesses were presented by the importers who testified in substance that they regarded the connecting rods as parts of the drive wheels. The testimony as a whole, however, indicates that this opinion was based upon the fact that the wheels as drive wheels could not be used without the connecting rods; that without the connecting rods they would not be drive wheels; that the circular wheels proper were counterweighted on one side to balance the weight of the rods on the wheel, and that this fact helped to establish that the rods were parts of the wheels.

It was found by the board below and is urged by the Government's counsel in this court that the rods were parts of the locomotive, but not parts of the wheels. With this conclusion we agree.

The importers complain that the finding of the board that the rods were parts of the locomotive implies that the rods could not be parts of the locomotive and the wheels at the same time. There is nothing in the finding of the board, in our judgment, which would imply, under a different statement of facts, that a thing could not be a part of a wheel and at the same time in a broader sense be a part of a locomotive. We think there might be something connected with the wheel that would be a part of the wheel, and also in a broader sense a part of the locomotive, but in the case at hand although the rods are connected with the wheels and are absolutely necessary to the operation of the wheels they are not parts of the wheels within the meaning of paragraph 324.

Exhibit 4 shows one side of a railway locomotive with four wheels and rods attached. The main connecting rod leading from the piston rod connects with the rods leading to three wheels. Can it be urged that the rods are parts of the three wheels? The exhibit also shows other rods connected with the wheels not necessarily a part of the driving apparatus. It seems that it is far fetched to contend that because the rods are connected with the wheels that they, therefore, become parts of the wheels. There is, of course, an easily recognized difference between a drive wheel on a locomotive and the ordinary wheel which merely supports weight and revolves when the engine or vehicle is in motion. The drive wheel not only carries weight, but to it is applied the power that moves the locomotive. This, however, does not change the ordinary meaning of the words "wheels for railway purposes."

Knight's American Mechanical Dictionary (vol. 1, p. 754) defines a driving wheel as "one of the large wheels of a locomotive to which the connecting rods of the engine are attached."

In the opinion by the board it is stated that to hold that the rods are parts of the drive wheels would be equivalent to holding that the belt which operates a flywheel is a part of the latter, or that a sprocket chain is a part of a bicycle wheel. In the latter instances the wheels can not operate without the belt and the sprocket chain. It is the belt and the sprocket chain that gives the respective wheels their power, but the wheels regardless of the belt and sprocket chain are wheels nevertheless.

Since the rods are parts of locomotives they can not be parts of "other machines * * * not specially provided for" under paragraph 372 as claimed in the protest.

That the rods do not fall within paragraph 322 as "all other railway bars made of iron or steel" is evident, since this paragraph obviously covers bars which are in no way connected with the construction of a railway locomotive.

Paragraph 312 for all other structural shapes of iron or steel, clearly does not apply to parts of a locomotive, since it can not be said that a railway locomotive is a structure so as to bring it within the term "all other structural shapes of iron or steel." In the case of Simon, Buhler & Baumann v. United States (8 Ct. Cust. Appls. 273; T. D. 37537), the court held that the merchandise consisting of steel channel irons, steel bars, frames, plates, etc., all ready to be assembled into a mash filter, was such "structural shapes of iron or steel" for the reason that the mash filter was a structure and not a manufacture of metal.

While the importers in their protest claimed that the importation might be properly classified under paragraph 304 as shafting, or as shapes of molded steel castings, or as steel not specially provided for, this contention was not urged in this court either in appellant's brief or oral argument to any great extent. A casual examination of the paragraph compels the conclusion beyond a doubt that the merchandise imported was never intended to be classified under the same.

The merchandise not being wheels for railway purposes, paragraph 399 more appropriately covers it than any other paragraph in the act and it is therefore properly classified.

The judgment of the Board of General Appraisers is *affirmed*.