THE FROST RAILWAY SUPPLY CO. *v.* UNITED STATES (No. 4668) [1]

United States Court of Customs and Patent Appeals, November 7, 1951

*John C. Ray* for appellant.

*David N. Edelstein*, Assistant Attorney General (*Joseph F. Donohue* and *Alfred A. Taylor, Jr.*, special attorneys, of counsel), for the United States.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, C. D. 1281, overruling the protest of the importer.

Merchandise described on the consular invoice and entry papers as "Railroad Truck Spring Snubbers" was classified by the Collector of Customs as "Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel * * * or other metal," under paragraph 397 (19 U. S. C. 1001, par. 397) of the Tariff Act of 1930. Duty was accordingly assessed at the rate of 45 per centum ad valorem.

The importer protested the collector's assessment, claiming the merchandise to be dutiable at 15 per centum ad valorem as "structural shapes" under the provisions of paragraph 312 (19 U. S. C. 1001, par. 312) of that act as modified by the trade agreement between the United States and Belgium, 67 Treas. Dec. 470, T. D. 47600.

The paragraph in question reads as follows:

*Par. 312.* Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns or posts, and deck and bulb, together *with all other structural shapes of iron or steel;* any of the foregoing machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting * * * 15 per centum ad valorem. [Italics ours.]

The "Frost No. 360 snubber," the imported article, consists of a center coil of metal in spring shape having inclined surfaces on both sides forming a wedge between the inclined surfaces. Spiralled on this central coil are three outer coils of metal having inclined surfaces in juxtaposition to those of the central coil and forming wedges which cooperate with the wedges of the inside coil. As the spring is compressed the turns of the inner coil get closer together and rub transversely of each other on the outer coil. The outer coil gets a larger radius because it is pushed out by its own wedge and the wedge of the inner coil, thus forcing the ends of the outer coil to travel around the inner coil. Friction is thus created by the rubbing in two directions between the inner and outer coils. A sample of one of the imported snubbers, weighing approximately 23 pounds, was received in evidence, as was a miniature snubber, one-quarter size.

The snubbers were invented by a Mr. Frost, the father of Harry W. Frost, a witness and one of the principals of the appellant company. Similar snubbers had been manufactured by the Detroit Steel Products Co. of Detroit, Mich., whereas the present importation was manufactured in Canada by B. J. Coghlin Co., Ltd.

Appellant took the testimony of three witnesses. Harry W. Frost, one of the principals of the Frost Railway Spring Co., stated that the snubber acted on a freight car the same as a shock absorber acts on an automobile, that it limits the movements of the springs, eliminates the violence of the action of the car body, eliminates breakage of coil springs and reduces the damage to the lading of the car. The witness Frost further stated that the snubbers were used among the springs in the suspension nests of the car; that in a four spring nest, one spring being replaced with a snubber, the snubber would carry, on compression, a quarter of the weight supported by that nest; that when the car went back upwards, relieving the compression, the snubber would carry about a fifth of the weight it had carried on compression.

Harry G. Love, a retired railroad shop superintendent with 47 years experience, testified that he had inserted hundreds of these snubbers in freight cars and that the purpose of such snubbers was to prevent spring breakage.

Louis E. Endsley, an eminently qualified consulting engineer, stated that the Frost snubber was not a spring, that it was a machine for absorbing energy, that it takes out that energy which is put in when the car hits a low spot, as it does at each rail joint, that it prevents the springs from going solid, that other hydraulic snubbers are in existence similar to those used on automobiles, that snubbers are indispensable for low cost transportation, and that they are an integral part of a railway car.

This court has had occasion in the past to define "structural shapes" as that term is applied to specific merchandise. No precise definition,

however, can be laid down to cover the term, each case depending on its own record for determination. *Judson Freight Forwarding Co.* v. *United States*, 20 C. C. P. A. (Customs) 229, 235, T. D. 46038; *Otis McAllister & Co.* v. *United States*, 27 C. C. P. A. (Customs) 4, 6, C. A. D. 52.

In the case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, this court made its first inquiry into the scope of paragraph 104 of the tariff act of 1913, the forerunner of paragraph 312 of the current act. Steel channel irons, steel bars or grates, and frames, plates, center pieces, posts, and heads or end pieces of cast iron, materials ready to be assembled as parts of a mash filter, had been refused classification as structural shapes, the government contending that none of the articles were *ejusdem generis* with those provided in paragraph 104, and that they were not intended to be used in the construction of buildings or of ships. This court could not agree that Congress intended to confine the materials of paragraph 104 to such as are used for buildings, ships and similar erections, but was of a mind that the structures there intended were of a more general nature. The belief was professed that "the expression 'structural shapes' does import to people in general a capacity to sustain heavy weights or to resist great tension or both." As the merchandise before the court was deemed of that nature it was held classifiable as structural shapes.

In *United States* v. *Frank*, 15 Ct. Cust. Appls. 97, T. D. 42184, certain steel sheet piling was held to be properly classified as structural shapes of iron or steel under paragraph 312 of the Tariff Act of 1922. We there noted that for years the material had been definitely, uniformly, and generally treated and used by the steel trade as structural shapes, and citing the *Simon, Buhler* case, *supra*, we held the sheet piling to be within the purview of the definition there annunciated.

In the case of *United States* v. *Henry L. Exstein Co., Inc.*, 16 Ct. Cust. Appls. 328, T. D. 43079, so-called deformed steel bars for reinforcing concrete came before the court. The bars were the familiar reinforcing bars whose surfaces bore ridges and protuberances to aid the bars in holding when imbedded in concrete. As imported the bars were straight. This court, observing that the bars were bought and sold in the markets of the United States and used precisely as other structural shapes of steel, pointed out that though these bars might be considered a border line material, they were nevertheless classifiable as structural shapes in accordance with the teaching of the *Simon, Buhler* and *Frank* cases, *supra*.

In the case of *Judson Freight Forwarding Co.* v. *United States*, *supra*, we rejected the chief or exclusive use doctrine as determinative of classification under paragraph 312, and held that Congress did not intend to limit the term "structural shapes" to such shapes as were

used only in *large* structures, but intended to include "all structural shapes of iron or steel having the capacity to sustain [relatively] heavy weights or to resist great tension or both." We accordingly held certain 2 x 2 x ⁹⁄₁₆ inch angles to be classifiable under paragraph 312.

In the case of *United States* v. *Julius Blum & Co., Inc.*, 26 C. C. P. A. (Customs) 168, C. A. D. 12, this court again had before it a decision of the Customs Court wherein the doctrine of chief use had been relied upon to classify under paragraph 312 certain steel sections varying in length from 18 to 20 feet and in width from 15/16ths to 2 and 1/8th inches and described on the invoice as "structural angles and channels." In our decision we reiterated our stand in the *Judson Freight Forwarding Co.* case, *supra*, and again rejected the doctrine of chief use as determinative of the question. The case was remanded for further consideration by the trial court.

Thus this court has in the past held the following merchandise to be structural shapes within the meaning of the appropriate tariff acts: steel bars or grates, frames, plates, posts, steel sheet piling, deformed steel bars for reinforcing concrete and small (2 x 2 x 3/16th inch) angles. On the other hand, we have in equally numerous instances refused to classify goods as structural shapes.

In the case of *Myers & Co.* v. *United States*, 12 Ct. Cust. Appls. 350, T. D. 40490, connecting rods for locomotive drive wheels were before us and were held not classifiable as structural shapes of iron or steel. It was pointed out that while the mash filter in the *Simon, Buhler* case, *supra*, was a structure and not a manufacture of metal, a railway locomotive was not such a structure.

In *E. L. Soule & Co.* v. *United States*, 16 Ct. Cust. Appls. 524, T. D. 43240, it was contended that universal mill plates, which are plates of steel 3/4ths of an inch thick, about 40 feet long and 8 to 18 inches wide, were properly classifiable as structural shapes of iron or steel. This court held, however, that structural shapes were more than mere material, more than structural steel, and that consequently the universal mill plates could not be classified as structural shapes within the meaning of the tariff act.

In *Amerlux Steel Corp.* v. *United States*, 18 C. C. P. A. (Customs) 449, T. D. 44700, it was held that checkered, or raised diamond, steel floor plates were not classifiable under paragraph 312 of the Tariff Act of 1922 as structural shapes.

In *European Trading Co.* v. *United States*, 19 C. C. P. A. (Customs) 82, T. D. 45225, certain wire netting used for no purpose other than holding stucco on the sides of structures or buildings was held properly classified by the collector under paragraph 399 of the Tariff Act of 1922 rather than under paragraph 312 of the same act. We there opined that if the deformed steel bars of the *Exstein* case, *supra*, were on the border line, wire netting was entirely beyond the border line.

In *Otis McAllister & Co.* v. *United States, supra*, an importer contended for the classification of galvanized, corrugated iron sheets under paragraph 312 of the Tariff Act of 1930. The sheets were principally used in the construction of buildings and formed the walls and roofs thereof. This court, pointing out that no precise definition of structural shapes could be laid down, and noting that the sheets of themselves were not designed to carry a building load or stress, held that the imported merchandise was properly adjudged dutiable as sheets of iron or steel, corrugated, under paragraph 308.

On occasion in the past, *United States* v. *Julius Blum & Co., Inc., supra*, and case cited therein, we have quoted the following dictionary definition of "structural shape:"

> Structural shape, *Engin. & Arch.*, the shape of a member especially adapted to structural purposes, esp. in giving the greatest strength with the least material. Hence, Colloq., any steel or iron member of such shape, as channel irons, I-beams, T-beams, etc., or, sometimes, a column, girder, etc., built up with such members.

The *Condensed Encyclopedia of Engineering*, first edition, The Industrial Press, New York, p. 1068, gives the following under the heading "Structural Shapes:"

> Steel rolled to standard sections is widely used in building construction and in the manufacture of railway cars, agricultural implements, automobiles and numerous other products. By using a standard shape which is on the market and is adapted to a given structure or design, it is often possible to secure a stronger, lighter construction and a reduction of manufacturing cost. Shapes which have been widely used are shown in the accompanying illustration. There are many other more or less special shapes for use in the agricultural, automotive, railway car, ship-building and other large industries.

The illustration referred to shows sections of channels, angles, bulb angles, H-beams, tees, zees and rails.

Marks' *Mechanical Engineers' Handbook*, third edition, McGraw-Hill, pp. 1564–1580, lists the properties of standard structural shapes, channels, angles, tees, I-beams, T-beams, etc., and it is apparent that all of the structural shapes there listed are straight pieces of indefinite length.

The snubbers involved in the instant case are not of unitary construction, i. e., they consist of more than one piece of metal, all of which pieces are coiled and arranged in concentric form as set forth hereinbefore. It seems obvious to us that these snubbers are not within the meaning of the term "structural shape" as it is used in either of the engineering handbooks above referred to. It further seems clear that the subject snubbers are not designed to give the greatest strength with the least material as the dictionary definition requires. It appears to us that if deformed steel bars, which are listed in engineering works among structural shapes (See Camp and Francis, *The Making, Shaping and Treating of Steel*, fourth edition, Carnegie Steel Co., p. 592) are on the border line of structural shapes

within the meaning of paragraph 312, then the snubbers before us are clearly and completely beyond the border line. Certain it is that merchandise of the type before us is not bought and sold and used as structural shapes within the meaning of the words as they are defined in either standard dictionaries or engineering works. A review of the prior cases in which this court has interpreted paragraph 312 leads us to the irresistible conclusion that the railway spring snubbers before us are not "structural shapes" within the meaning of that paragraph.

The judgment of the trial court is accordingly *affirmed*.